NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN GODFREY,<br><br>Plaintiff,<br><br>v.<br><br>THERMCO and<br>PHILIP GIUBARDO,<br><br>Defendants. | Civil Action No. 13-4750 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Thermco and Defendant Philip Giubardo (collectively "Defendants")' Motion for Partial Dismissal of Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

**I.      BACKGROUND**

   A.      Procedural History

On March 15, 2013, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations of the Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA"). (Def. Mot. Exhibit A.)

On August 8, 2013, Plaintiff filed the instant Complaint in this Court. [CM/ECF No. 1.] Plaintiff's Complaint is comprised of thirteen counts of discrimination under the New Jersey Law Against Discrimination ("NJLAD") and the ADEA. Against Defendant Thermco, Plaintiff alleges wrongful termination, hostile work environment, and retaliation on account of his age pursuant to the ADEA, and on account of his age and disability pursuant to NJLAD. (Compl. at ¶¶ 134-163.) Against Thermco's President, Philip Giubardo ("Giubardo"), Plaintiff asserts claims of retaliation, aiding and abetting disability discrimination, and aiding and abetting age discrimination under NJLAD. (Compl. at ¶¶ 164-172.)

Defendants filed a motion for partial dismissal of Plaintiff's Complaint on September 17, 2013. [CM/ECF No. 7.] Specifically, Defendants moved to dismiss all counts in the Complaint, with the exception of those for wrongful termination, because they are time-barred. Defendants also moved to dismiss the aiding and abetting counts against Giubardo because "as the alleged principal wrongdoer identified in the Complaint, it is legally impossible for him to have 'aided and abetted' his own allegedly improper conduct."[1] (Def. Mot. at 1.) On October 21, 2013, Plaintiff responded to Defendant's motion and clarified that he was not seeking to recover for any events outside of the relevant statute of limitations periods. [CM/ECF No. 9.]

Defendants filed a reply on October 31, 2013.[2] Defendants contend that Plaintiff should be forced to replead the allegations contained in the Complaint in a manner consistent with the Federal Rules of Civil Procedure and to make it clear which facts support which claims. [CM/ECF No. 10.] Defendants also assert that eleven of thirteen counts in Plaintiff's Complaint fail to state a prima facie cause action under either the ADEA or NJLAD against Defendants Thermco or Giubardo.

---

[1] Defendants also move to dismiss Plaintiff's claims for emotional and punitive damages under the ADEA. In his opposition brief, Plaintiff clarified that he "did not seek those damages under the ADEA, but under the NJLAD." (Pl. Opp. at 4 n.1.) Thus, Defendants' motion to dismiss Plaintiff's claims for emotional and punitive damages under the ADEA is moot.

[2] The Court notes that Defendants' Reply brief was filed three days past the October 28, 2013 deadline.

2

B.  Relevant Facts[3]

Plaintiff is a 65-year-old male. (Compl. at ¶¶ 11-12.) He was employed as an outside salesman by Thermco beginning in 1991. (*Id.* ¶¶ 24, 26.) In 2002, Defendant Giubardo discussed with Plaintiff the possibility that he could be promoted to Sales Manager. (*Id.* ¶ 31.) That same year, during a business trip to a trade convention, Plaintiff experienced pain and discomfort due to arthritis in his hip and was unable to walk through the exhibition center. (*Id.* ¶¶ 33-36.)

As a result, Plaintiff asked Giubardo to be excused from the convention for a short time to return to the hotel to rest, which Plaintiff contends was a request for a reasonable accommodation. (*Id.* ¶¶ 36, 38.) Plaintiff went to the hotel gym to "stretch and try to loosen his hip." (*Id.* ¶ 39.) When Giubardo returned and found Plaintiff in the gym, Giubardo was furious and refused to speak to him. (*Id.* ¶¶ 40, 41.)

Plaintiff states that "after the hip incident" in 2002, he was never offered the promotion to Sales Manager. (*Id.* ¶¶ 59, 60). Plaintiff asserts that after 2002, Giubardo was hostile towards him and excluded him from company trips. (*Id.* ¶¶ 46-48.) Prior to the 2002 incident, Plaintiff was almost always included on business trips. (*Id.* ¶ 46.) Unbeknownst to Plaintiff, after the 2002 incident, Defendants also "began spying on [his] accounts" and co-workers began conducting business on those accounts. (*Id.* ¶¶ 52-54). Plaintiff "regularly suffered the embarrassment of being told by his own customers that important business had been conducted without his knowledge," despite Plaintiff having asked to be included in the customer meetings or "at least informed as to their contents and results." (*Id.* ¶¶ 54-55.) After the hip incident, Giubardo never discussed the Sales Manager position with Plaintiff again. (*Id.* ¶ 59.) According

---

[3] The Court accepts all allegations in the Complaint as true for purposes of the instant motion.

3

to Plaintiff, such actions constitute unlawful disability discrimination and retaliation for the "incident with the hip" in 2002, and also constitute age discrimination. (*Id.* ¶¶ 57-58).

In 2006, Defendants reorganized management personnel. (*Id.* ¶ 61.) Several employees who joined the company between 2000 and 2002, all of whom were younger than Plaintiff, were promoted and given new titles. (*Id.* ¶¶ 62-63.) One co-worker told Plaintiff that Giubardo had decided to go with "the younger guys." (*Id.* ¶ 67.) Plaintiff states he was qualified for these positions and had more seniority than his younger co-workers who were promoted. (*Id.* ¶ 70.) Plaintiff alleges that he was not promoted "because of his age and disability," and that this nonpromotion constituted "continuing retaliation against [him] for having requested a reasonable accommodation for the arthritis in his hip." (*Id.* ¶ 71.)

In 2009, Plaintiff was informed by Mr. Giubardo that instead of exclusively serving as an outside salesman, he would now "work as an inside radiant heat specialist three days per week and remain as an outside salesman for two days per week." (*Id.* ¶ 73.) Plaintiff asserts that working as an inside salesman "is less desirable than working outside," and made him feel humiliated and degraded because he had to cover the telephones and work for the younger, less experienced outside salesmen. (*Id.* ¶¶ 73, 77, 78, 80.) Plaintiff "objected to and resisted this change because it was a demotion and because it was discriminatory based on his age and based on Giubardo's retaliation for Plaintiff's prior request to be accommodated during the 2002 business trip." (*Id.* ¶ 74.) Plaintiff responded by "explain[ing] to management that he did not want this inside sales job, that he wanted it to be temporary, and that he would never work inside for more than 3 days per week." (*Id.* ¶ 79.) Plaintiff also contends that he suffered a "loss of collegiality" when colleagues stopped inviting him to lunch after his demotion, which contributed to a hostile work environment. (*Id.* ¶¶ 88, 91.)

As a result of the demotion, Plaintiff developed "stress-related autoimmune health problems and was prescribed medications by his doctors." (*Id.* ¶ 81.) Plaintiff states that management was aware of his health problems. (*Id.* ¶ 83.) On one occasion, "Giubardo commented that Plaintiff was standing crooked with one shoulder lower than the other." (*Id.* ¶ 86.) Plaintiff contends that this comment was designed to humiliate him because of his medical conditions. (*Id.* ¶ 87.) "Despite the demotion, Plaintiff performed all of his duties competently and satisfactorily. (*Id.* ¶ 92.)

In November 2012, Plaintiff was called into a meeting with two sales managers and told that he had to relinquish all outside sales responsibilities and work inside full time. (*Id.* ¶ 93, 94). One of the managers said that he knew Plaintiff "would not like this move." (*Id.* ¶ 95.) Plaintiff refused the position because "the added stress would have a negative effect on his health, and because he considered it a demotion." (*Id.* ¶ 97.) According to Plaintiff, he "had made it clear for years that he would not accept such a move because it would be detrimental to his health and it was humiliating to be demoted." (*Id.* ¶ 103.)

Days later, Plaintiff met with Giubardo and Thermco's Vice President and Human Resources Manager, Barbara Schumacher, and was told he must take the inside sales position or be terminated. (*Id.* ¶¶ 104, 105.) Plaintiff then "reminded them of his previous health problems" and explained that although he wanted to stay with the company, if he was "forced to work inside under humiliating conditions, including working full time under younger people with less seniority, it would have a severely detrimental effect on his health." According to Plaintiff, this conversation was a request to reasonably accommodate his unidentified disability and to cease discriminating against him because of his age. (*Id.* ¶ 108.)

Giubardo responded that, to remain employed, Plaintiff had to accept the inside sales position and relinquish all of his outside sales duties, management duties, and customers in order to work on radiant heating design and other products. (*Id.* ¶¶ 112, 113.) Schumacher stated that she wondered whether Plaintiff was healthy enough to work at all, but she did not request any medical documentation from Plaintiff related to his condition. (*Id.* ¶ 110.) Plaintiff contends that this constituted a "total abdication of [Schumacher's] duty to engage in a good faith process with Plaintiff to try and accommodate his health issues." (*Id.* ¶ 111.)

Plaintiff contends that this change from outside sales to inside sales was a substantial demotion that was designed to make his termination appear to be a resignation–"a termination of employment in disguise"–and "was the final act of discrimination and retaliation against Plaintiff because of his age and medical conditions." (*Id.* ¶¶ 102, 115.) Plaintiff contends that the "alleged job offer was…a pretext to force Plaintiff, as the oldest employee at [Thermco] and someone with health issues, out of the company because of his age and medical conditions." (*Id.* ¶ 119.) Upon refusing to accept the position, Plaintiff was terminated on or about December 7, 2012. (*Id.* ¶ 127.) Plaintiff alleges that Defendants refused to provide him reasonable accommodations for his disabilities, terminated him in retaliation for requesting such accommodations and because of his age, and subjected him to a hostile work environment. (*Id.* ¶¶ 129-131.)

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

### III. DISCUSSION

#### A. Timeliness of Plaintiff's ADEA and NJLAD Claims

Defendants do not assert that Plaintiff's claims for wrongful termination under the ADEA and NJLAD are barred by the relevant statute of limitations periods. However, Defendants move to dismiss Plaintiff's remaining ADEA and NJLAD claims because "Plaintiff's multiple allegations of discrete acts of age discrimination dating back more than a decade to his claimed nonpromotions in 2002 and 2006, as well as his alleged demotion in 2009, are time-barred and cannot be revived by the continuing violation theory." (Def. Mot. at 10.)

The ADEA requires that a complainant exhaust his administrative remedies prior to filing a complaint in federal court. *See* 29 U.S.C. § 626(d)(1) (requiring a complainant to file a charge with the EEOC prior to commencing an action in district court against that party). In order to exhaust administrative remedies, an individual must file a charge "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. §§ 626(d)(1)(B), 633(b). The ADEA's exhaustion requirement functions as a statute of limitations. *See, e.g., Noel v. Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010). Claims brought under the NJLAD, on the other hand, are subject to a two-year statute of limitations. *Montells v. Haynes*, 133 N.J. 282, 627 A.2d 654 (1993).

Defendants assert that Plaintiff is attempting to recover damages for discrete acts that occurred outside of the limitations period for bringing claims under the ADEA and NJLAD. Specifically, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his ADEA claims for retaliation and hostile work environment because many of the events detailed in Plaintiff's Complaint occurred more than 300 days in advance of his EEOC filing. As for Plaintiff's NJLAD claims for retaliation, hostile work environment, and failure to accommodate disability against Thermco, and for retaliation and aiding and abetting against Giubardo, Defendants assert that those claims are similarly time-barred to the extent they seek to recover for events that occurred outside of the relevant two-year statute of limitations period.

In his opposition to Defendants' motion to dismiss, Plaintiff states that "Defendants have misunderstood" his claims because he does "not seek to recover any damages for events beyond the statute of limitations period." (Pl. Opp. at 12.) Plaintiff explains that "[w]hile the Complaint gives details as to the parties' relationship dating back to 2002[, t]he legal claims only seek recovery for events within the statute of limitations period." (*Id.* at 13.)

In response to Plaintiff's stated intention to seek damages only for those events that occurred within the statute of limitations periods, Defendants assert that Plaintiff should be forced to clarify his Complaint. Defendants allege that, because Plaintiff's Complaint now contains "nearly 80" paragraphs detailing events for which Plaintiff cannot recover, Plaintiff should amend his Complaint to reflect: "(1) the precise allegations he contends are within the actionable periods; and (2) …any viable claims that remain aside from his cause of action for wrongful termination." (Def. Reply at 6, 8.)[4] The Court agrees.

---

[4] The Court notes that Defendants did not include page numbers on their Reply Brief. As such, the page numbers referenced herein refer to the numbers as marked in the CM/ECF system.

The basic pleading requirements of Rule 8(a) require that a complaint put the defendant on notice of the basis of the claims asserted against him. *See Twombly*, 550 U.S. at 570. While, typically, a failure to satisfy Rule 8 occurs where few or only conclusory facts are pled, a complaint like Plaintiff's also fails to satisfy this basic rule. Plaintiff's Complaint, standing alone, has failed to put Defendants on notice of the basis of all of the claims against them. Plaintiff has pled many detailed factual allegations outside of the relevant period and has failed to specify precisely which facts support which elements of his claims. Neither the Court nor Defendants should be required to guess which particular claims are being asserted on the basis of which events and/or to sift through a tome of allegations to piece together those claims.

Therefore, the Court grants Defendants' motion insofar as it seeks the dismissal of Plaintiff's aforementioned ADEA and NJLAD claims. Plaintiff may re-plead his claims in a manner that complies with Rule 8.

B. <u>Aiding and Abetting Claims Against Giubardo</u>

Defendants argue that Giubardo cannot be held liable under an aiding and abetting theory, since, by Plaintiff's account, Giubardo was the principal wrongdoer. Defendants cite a number of decisions within this District in line with Defendants' argument, but that were issued prior to the Appellate Division's recent opinion in *Rowan v. Hartford Plaza Ltd.*, which held that "a principal wrongdoer can be held liable for aiding and abetting his own conduct under the NJLAD." *Vazquez v. Karcher North Am., Inc.*, 2013 U.S. Dist. LEXIS 146015, at *10-11 (D.N.J. Sept. 23, 2013) (citing *Rowan*, 2013 N.J. Super. Unpub. LEXIS 766, at *15-20 (N.J. Super. Ct. App. Div. Apr. 5, 2013)).

"Under [*Rowan*], [a] supervisor[], like [Giubardo], can be held liable for aiding and abetting his employer's wrongful conduct, even where the only bad conduct at issue is the

supervisor's own conduct." *Brown-Marshall v. Roche Diagnostics Corp.*, 2013 U.S. Dist. LEXIS 101179, at *19-21 (D.N.J. July 19, 2013) (citing *Rowan*, 2013 N.J. Super. Unpub. LEXIS 766, at *19). "While it is admittedly an 'awkward theory' to hold an individual liable for aiding and abetting his own conduct, it would thwart LAD's broad and remedial purpose, and make little sense, to construe it as permitting 'individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct." *Brown-Marshall*, 2013 U.S. Dist. LEXIS 101179, at * 19-21 (citing *Rowan*, 2013 N.J. Super. Unpub. LEXIS 766, at *18.)

Although the Court acknowledges that the *Rowan* decision is unpublished and thus non-binding on New Jersey Courts, this Court agrees with the three Courts in this district that have found the reasoning in *Rowan* persuasive and followed its holding.[5] *See Regis v. Int'l Paper Co.*, 2013 U.S. Dist. LEXIS 138270, at *10-13 (D.N.J. Sept. 26, 2013); *Vazquez*, 2013 U.S. Dist. LEXIS 146015, at *10-11; *Brown-Marshall*, 2013 U.S. Dist. LEXIS 101179, at *19-21; *see also Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) ("Under the LAD a supervisory employee may be liable for discrimination for aiding and abetting another's (the employer's) violation."); *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999) (holding that a supervisor who engages in "affirmatively harassing acts," "flouts [his] duty" and "subjects himself and his employer to liability"). Accordingly, insofar as Defendants move to dismiss the aiding and abetting claims against Defendant Giubardo with prejudice, their motion is DENIED.

**CONCLUSION**

---

[5] The Court notes that, although a supervisor may be individually liable under an aiding and abetting theory when he is the principal wrongdoer, individuals can be liable under LAD only when their employer may be held liable under LAD. *See Joseph v. N.J. Transit Rail Operations*, 2013 U.S. Dist. LEXIS 149254, at *37-38 (D.N.J. Oct. 17, 2013); *Roman v. Waste Mgmt. of N.J.*, 2011 U.S. Dist. LEXIS 50910 (D.N.J. May 12, 2011); *see also Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 n.15 (3d Cir. 2004).

Based on the reasons set forth above, insofar as Defendants move to dismiss Counts Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen of Plaintiff's Complaint, the Court grants their motion, and dismisses those counts without prejudice. Plaintiff may file an amended that complies with Rule 8(a) on or before December 6, 2013.

An appropriate Order accompanies this Opinion.

JOSE L. LINARES
U.S. DISTRICT JUDGE

Date: November 4, 2013